HAL WHALEN, Plaintiff-Appellant, v. CHARLES SHEAR, Defendant (Dunn & Martin, Ltd., Intervenor-Appellee).

Third District   No. 3—88—0797

Opinion filed September 7, 1989.—Rehearing denied November 27, 1989.

Andrew J. Groesch, of Horwitz, Horwitz & Associates, Ltd., of Chicago (Clifford W. Horwitz, of counsel), for appellant.

Herschbach, Tracy, Johnson, Bertani & Wilson, of Joliet (Thomas R. Wilson, of counsel), for appellee.

JUSTICE SCOTT delivered the opinion of the court:

At issue on this appeal is the validity and the amount of a discharged attorney's lien for fees. In the circuit court of Will County, the lien was upheld and for the amount of $29,277.68. This appeal followed.

On the evening of June 23, 1986, the plaintiff, Hal Whalen, was injured when he was struck by a motor vehicle driven by the defendant, Charles R. Shear, and then hospitalized with serious injuries. After this initial one-sentence statement of facts, the record on appeal sets forth two very different versions of events. According to the plaintiff, Whalen, when he left the hospital in mid-July, he first realized, upon receipt of a letter, that while in the hospital he had retained Thomas Dunn, an attorney, to represent him in legal actions arising from his personal injuries. Whalen tried to discharge Dunn—and his law firm, Dunn and Martin—only to find out that he had signed a retainer agreement while hospitalized. Whalen testified that prior to this time, he had never heard of Thomas Dunn and that in the weeks that followed he again told Dunn that he did not want the lawyer's services.

In the meantime, Dunn proceeded to represent Whalen and had settled the latter's property damage claim for $2,250 within a month. He also obtained copies of the police reports and medical records. Dunn had an investigator take photos of Whalen's vehicle and negotiated a forbearance with the collection lawyers for the hospital where Whalen's injuries were treated.

Whalen testified that Dunn would not return his phone calls, that he was often out of the office, and that he had no confidence in Dunn's ability to handle his case. Therefore, on September 2, 1987, Whalen entered into a representation agreement with Horwitz, Horwitz and Associates, Ltd, to be his attorneys. Whalen's new attorneys advised Dunn by letter of his discharge.

Prior to his discharge, Dunn had received an oral offer to settle Whalen's case from the insurance adjuster. The settlement offer was in the amount of $85,000. When Dunn received this offer in writing, he communicated same by letter to his former client.

As one might expect, Thomas Dunn's recollection of his relationship with this client differs. Dunn testified as follows:

"I had an individual I represented by the name of Ronald Tomich, who had a discussion with Mr. Whalen. *** Mr. Whalen had asked Mr. Tomich if he knew a 'good lawyer'. Mr. Tomich gave him my name. Mr. Tomich called me and asked if I would be interested in seeing Mr. Whalen. He was in the hospital. He was in intensive care. I said I would not see him, while he was

in intensive care, but after he got out of ICU, when he got out, I went to see him."

At the hospital, Whalen appeared in full command of his mental faculties. Dunn and Whalen had a 30-minute conversation regarding the accident, and Whalen signed the contingent fee contract with Dunn and Martin and certain medical authorizations. Dunn testified he met again with Whalen at the hospital before his erstwhile client's discharge.

Also, according to the fired attorney, he met with Whalen five to seven times during the course of his employment and conferred with his client by telephone 10 to 15 times. At no time during this period did Whalen ever complain of Dunn's services or say he did not want Dunn to be his attorney. The first hint of dissatisfaction was the discharge letter from the successor attorneys.

Upon being retained, the Horwitz law firm filed the instant lawsuit on behalf of Whalen. The claim in the suit against the defendant, Shear, was dismissed, when the action was settled on May 12, 1988, for $85,000, the exact same amount that Dunn had negotiated as a settlement some eight months previously. Thereupon, plaintiff filed a motion to adjudicate Dunn's claim for attorney's lien. As reported above, the circuit court of Will County upheld the validity of the lien and, based on the evidence, awarded the amount of $29,277.68.

■ In his argument on appeal, Whalen first urges that the attorney representation agreement/contingent fee contract entered into during his hospital convalescence was obtained through solicitation and was therefore void. There was certainly evidence in the record to support that conclusion, but evidence just as forceful and persuasive supports a different conclusion. As in other civil actions, it is for the trier of fact to determine the credibility of the witnesses and the weight of the evidence. (*Rosensweig v. Karras* (1950), 342 Ill. App. 204.) However, under the evidence which the trier of fact found more credible, the testimony of Attorney Dunn, there was no solicitation. *Mason v. Papadopulos* (1956), 12 Ill. App. 2d 140, 138 N.E. 2d 821.

■■ Whalen's second contention on appeal is that the trial court erred in assessing attorney fees in the amount of $29,277.68. That amount is exactly the sum of one-third of $2,250, one-third of $85,000 and the costs advanced by the Dunn and Martin law firm, $194.35. In other words, the trial court awarded fees in the exact amount called for in the contingent fee contract, which was terminated by the letter from the Horwitz law firm in September 1987. An attorney discharged from employment under a contingent fee contract is not entitled to the fee set forth in the contract, even if the discharge is without cause. (*Rhoades v. Norfolk & Western Ry. Co.* (1979), 78 Ill. 2d 217.) That

landmark case provides that an attorney discharged with or without cause under a contingent fee arrangement is only entitled to be paid on a *quantum meruit* basis a reasonable fee for services rendered before discharge, not contract fees. However, while a recovery under the contract is not permitted, the *Rhoades* court anticipated a situation, such as the one in the case at bar. Writing for the court, Justice Kluczynski noted:

> "[T]he factors involved in determining a reasonable fee would justify a finding that the entire contract fee is the reasonable value of services rendered." (*Rhoades v. Norfolk & Western Ry. Co.* (1979), 78 Ill. 2d 217, 230.)

Where, as here, the discharged attorney had procured the offer for the entire settlement, which was eventually accepted, and where it appears that the amount offered is attributable to the efforts primarily if not exclusively of the discharged attorney, then under *Rhoades*, the circuit court did not err in awarding fees in the amount set forth above.

For the reasons stated, and in reliance on the authorities set forth, the adjudication of lien arrived at by the circuit court of Will County is affirmed.

Affirmed.

WOMBACHER, P.J., and HEIPLE, J., concur.